IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RALPH JOSEPH WAYNICK <br>     Plaintiff, | * |
| v. | * CIVIL ACTION NO. DKC-06-833 |
| CORRECTIONAL MEDICAL <br>   MEDICAL SERVICES, INC. | * |
| WARDEN KATHLEEN GREEN <br> COMMISSIONER FRANK SIZER | * |
|     Defendants. | * |
| | *** |

## **MEMORANDUM OPINION**

I.    Procedural History

    Ralph Joseph Waynick filed an original and supplemental Complaint in March and April of 2006, while confined in the Eastern Correctional Institution ("ECI") in Westover, Maryland.[1] Paper Nos. 1 & 3. His allegations raised medical care and failure-to-protect claims. Plaintiff complained that he is legally blind and that his medical requests for eyewear to replace worn-out and irritating contact lenses were unsuccessful.[2] Plaintiff also complained that although sentenced to three and one-half

---

    1    Plaintiff was released from ECI and the Division of Correction on September 7, 2006. Paper No. 28.

    2    Plaintiff claims that upon his arrival at ECI on January 9, 2006, he put in a medical sick-call slip to receive an eye exam and obtain eyeglasses. He maintains that he also contacted ECI classification and administrative staff about his eye problem, but they took no action except to forward his concerns to medical personnel.

years on a misdemeanor offense and classified to minimum security, he was housed on medium security and celled with felons who had committed violent criminal offenses. In his supplemental Complaint, Plaintiff further expounded on the failure-to-protect issue, alleging that housing a legally blind inmate like himself with a cell mate with a violent criminal history placed him at further risk.

On July 17 and August 23, 2006, Defendants Correctional Medical Services, Inc. ("CMS"), Green, and Sizer filed their respective Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Paper Nos. 15 & 22. These Motions remain unopposed.[3] The matter is ready for this court's consideration. The undersigned concludes that an oral hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2004).

II.     Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in

---

   3   CMS filed court-ordered supplemental materials. Paper No. 28. Plaintiff was placed on notice of the filing and given an additional 30 days to file any opposition. Paper Nos. 20 & 29. No opposition was filed.

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

To prove the denial of medical care, Plaintiff must first illustrate a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson*

3

*v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If he satisfies this first element, Plaintiff must then show deliberate indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."[4] *Id*. at 837.  In addition to establishing that personnel acted with deliberate indifference to his serious medical needs, to succeed on § 1983 damage claim for violation of Eighth Amendment, Plaintiff must show that he suffered from serious injury as result of Defendants' conduct.   *See Lawrence v. Virginia Dep't of Corrections*, 308 F.Supp.2d 709, 720 (E. D. Va. 2004).

---

    4      42 U.S.C. § 1983 liability on the part of supervisory Defendants such as Green and Sizer requires a showing that:  (1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *See Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984)

III.   Analysis

Medical Defendant

CMS argues that as the private corporation that has contracted with Maryland to provide inmate medical services, it cannot be held liable for the alleged actions or inactions of medical staff under a theory of vicarious liability, otherwise known as the doctrine of *respondeat superior*. CMS further asserts, by the submission of the declaration of Nurse Kathryn Humberton and exhibits involving Plaintiff's eye complaints, evaluations, and on and off-site optometry and ophthalmology consultations, that Plaintiff has received adequate medical care. Their exhibits provide the following information.

Plaintiff was transferred to ECI on January 6, 2006. On January 10, 2006, he submitted a sick-call request for an eye examination and glasses. Paper No. 15, Exs. A & B. On January 20, 2006, Physician's Assistant ("P.A.") Messforosh examined Plaintiff and ordered an optometry consult to evaluate Plaintiff for eyeglasses. *Id.* On February 22, March 6, and March 19, 2006, Plaintiff again submitted sick-call encounter forms again requesting eyeglasses. On March 21, 2006, P.A. Messforosh again examined Plaintiff and ordered an optometry consultation. Paper Nos. 15 & 28, Exs. A & B. Plaintiff filed another sick-call form on March 27, 2006, asking to be

notified when the eye doctor was next at ECI.[5]  Paper No. 15, Exs. A & B; Paper No. 28, Ex. B.

On April 25, 2006, a Visual Screening Form was completed and plaintiff was referred to the optometrist.  *Id*.  On May 28, 2006, Dr. Robert Gertz examined Plaintiff and found that he had a history of optic neuritis (swelling or inflammation of the optic nerve).  *Id*.  Gertz referred Plaintiff to an ophthalmologist.  *Id*.  Plaintiff was evaluated at the Chesapeake Eye Center on June 14, 2006.  *Id*.  An ophthalmologist diagnosed Plaintiff's condition as bilateral optic neuropathy and high myopia.[6]  *Id*.  A prescription for eye-glasses was written.  *Id*.  On July 14, 2006, Gertz examined Plaintiff and fitted him for eyeglasses.  *Id*.  Plaintiff received the eyeglasses on July 25, 2006.  Paper No. 28, Exs. A & B.

CMS asserts that Plaintiff has failed to state a claim against it.  The undersigned agrees.  To the extent the Complaint attempts to implicate CMS in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear.  The

---

5   CMS asserts that Wexford Health, the company handling healthcare utilization review for the Department of Public Safety and Correctional Services, schedules the optometry clinics at ECI and informs CMS of the dates when the optometry clinics will be at ECI. Paper No. 15, Ex. A.  It argues that it has no control over the scheduling or cancellation of the optometry clinics.  *Id*.

6   In 2001, Plaintiff was found to be legally blind in each eye possibly from optic nerve ischemia and a macular problem.  Paper No. 15, Ex. B; Paper No. 28. Ex. B.  The condition is not reversible or correctable.  *Id*.

doctrine of *respondeat superior* does not apply to § 1983 claims. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). The court's inquiry, however, does not end there. The record shows that Plaintiff has failed to prove an Eighth Amendment violation on the part of CMS personnel.

Plaintiff arrived at ECI in January of 2006, and sought to obtain eyeglasses.[7] In response to his sick-call requests, Plaintiff was seen by P.A. Messforosh in January and March of 2006, and by medical staff in April of 2006. A visual screening form was completed and he was referred to an optometrist. In May of 2006, Plaintiff was examined by an optometrist and referred to an ophthalmologist because of his history of optic neuritis. Approximately two weeks later, Plaintiff was seen by an ophthalmologist who wrote a prescription for eye glasses. Two days later the optometrist fitted him for eyeglasses. *Id*. The prescription was filled and Plaintiff received the eyeglasses on July 25, 2006.

Plaintiff received examinations from an optometrist and ophthalmologist and was provided his eyeglasses after this law suit was filed, thus mooting his injunctive relief request. Further, with regard to his request for damages, the undersigned finds

---

7    The sick-call records indicate that Plaintiff sought eyewear because his pair of eyeglasses was lost upon his admission to the Division of Correction.

that Plaintiff has failed to show through record, verified affidavit or witness statements, that CMS was deliberately indifferent to his eye complaints and that this indifference caused him injury.

State Defendants

As an affirmative defense, Defendants Green and Sizer assert that Plaintiff's medical claims are subject to dismissal due to his failure to exhaust those claims through the Administrative Remedy Procedure ("ARP") process.[8]

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006).

---

   8   Defendants Green and Sizer further argue that they are not liable for the actions of medical staff and that Plaintiff received constitutionally adequate medical care.

Plaintiff's Complaint falls under the exhaustion prerequisites of § 1997e(a), and his claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).[9]

Defendants Green and Sizer provide verified declarations in support of their affirmative defense that Plaintiff has failed to exhaust administrative remedies regarding his medical claims. Paper No. 22, Exs. 1 & 2. Plaintiff does not refute these documents. Therefore, his medical claims against Green and Sizer are subject to dismissal under Rule 12(b)(6) for the failure to exhaust administrative remedies.

Plaintiff has also raised a failure-to-protect claim against Defendants Green and Sizer, alleging that while housed at ECI he was celled on medium security with felons in spite of his minimum security designation and sight limitations. Although Defendants Green and Sizer do not directly respond to these allegations, the court shall dismiss the claim.

---

[9] Under *Chase*, a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners. *See Chase v. Peay*, 28 F.Supp.2d at 529(emphasis added).

9

First, Plaintiff's injunctive relief request has been rendered moot due to the fact that he is no longer confined at ECI. Second, the undersigned concludes that Plaintiff has failed to set out any facts in support of a damage claim. To meet the standard for establishing a failure-to-protect damage claim under the Eighth Amendment, Plaintiff must project evidence that Green and Sizer knew of and disregarded an excessive risk to his health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997). Further, Plaintiff must show "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).[10] Although he seeks damages, at no point in time does Plaintiff allege that he suffered a physical injury due to his ECI housing assignment.

### III. *Conclusion*

For the aforementioned reasons, Defendant CMS's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted. Judgment shall be entered in favor of Defendant CMS. Further, Defendants Green and Sizer's Motion to Dismiss shall be granted as to

---

10   Under 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

Plaintiff's medical claim. Plaintiff's failure-to-protect claim for damages shall be dismissed without prejudice. A separate Order follows.


Date:____12/18/06_____          _____/s/_____
                                DEBORAH K. CHASANOW
                                United States District Judge